**UNITED STATES of America, Plaintiff,**

v.

**Marvin PESSES, et al., Defendants,**

**And Associated Counter– and Cross–Claims and Third Party Complaints.**

**Civ. A. No. 90–0654.**

United States District Court, W.D. Pennsylvania.

March 30, 1992.

152

Laura B. Ahearn, Washington, D.C., for Avco Corp.

Joseph S.D. Christof, II, Pittsburgh, Pa., for Stalloy Metals Inc.

Joseph V. Bullano, New Castle, Pa., for Lawrence County Individual Authority.

Howard J. Wein, Pittsburgh, Pa., for Segel & Sons Inc.

Anthony P. Picadio, Pittsburgh, Pa., for Marvin Pesses.

Gary P. Hunt, Pittsburgh, Pa., for Dollar Saving Associates.

Michael H. Ginsberg, Pittsburgh, Pa., for IMCERA Group Inc.

Robert Eberhardt, Asst. U.S. Atty, for U.S.

### ORDER

LEWIS, District Judge.

AND NOW, this 30th day of March, 1992, this court having independently reviewed the report and recommendation filed by United States Magistrate Judge Robert C. Mitchell with regard to the motion for partial summary judgment filed by plaintiff United States of America and the motions for summary judgment filed by seventeen defendants (the "moving defendants"), and having reviewed *de novo* the objections filed by various parties and the moving defendants' motion for oral argument on the objections,

IT IS HEREBY ORDERED that the moving defendants' motion for oral argument on the objections is DENIED. Counsel for the moving defendants participated in oral argument before Magistrate Judge Mitchell, the court has reviewed the transcript of that argument, and the court needs no further argument in order to decide this matter.

IT IS FURTHER ORDERED that plaintiff's motion for partial summary judgment is GRANTED and the moving defendants' motions for summary judgment are DENIED, as set forth in the report and recommendation.

With some minor revisions, the report and recommendation dated December 30, 1991 is hereby adopted as the opinion of the court. First, the court notes that the report and recommendation speaks of the moving defendants being "held jointly and severally liable for the past, present and future costs of the environmental response to the deposit of hazardous substances at the Metcoa site." This language, which appears both at the beginning and at the end of the report and recommendation, is stricken from the report and recommendation. Granting the plaintiff's motion for partial summary judgment does not automatically result in the moving defendants being held liable for the response costs at issue. Instead, granting the plaintiff's motion merely establishes that the moving defendants are "responsible persons" within the meaning of 42 U.S.C. § 9607(a). *See* the report and recommendation at p. 3 n. 2.

Second, some of the defendants object that the magistrate judge did not address certain of their arguments. In fact, most such arguments were addressed. With respect to those that were not explicitly addressed in the report and recommendation, the court adopts the reasoning set forth in the plaintiff's brief and reply brief in support of its motion for partial summary judgment and in opposition to the moving defendants' motion.

## REPORT AND RECOMMENDATION

ROBERT C. MITCHELL, United States Magistrate Judge.

### I. *Recommendation:*

It is respectfully recommended that the plaintiff's motion for partial summary judgment be granted, and that the moving defendants be held jointly and severally liable for the past, present and future costs of the environmental response to the deposit of hazardous substances at the Metcoa site.

### II. *Report:*

Presently before the Court for disposition is a motion for partial summary judgment submitted by the plaintiff, United States of America, and motions for summary judgment submitted by seventeen defendants [1] ("moving defendants").

The plaintiff commenced this action against twenty-six defendants pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, et seq., to recover costs it incurred in response to the alleged release or threatened release of hazardous substances at the Metcoa Radiation Site located in Pulaski, Pennsylvania (hereinafter, the "Site" or "Metcoa"). The plaintiff alleges that beginning in or about 1975, the moving defendants and others arranged for the disposal or treatment of hazardous substances at the site; that in 1986 the Environmental Protection Agency ("EPA") conducted an investigation of the site which revealed the presence of approximately 3,000 55–gallon drums containing hazardous substances; that such hazardous substances as cadmium, chromium, copper, lead, magnesium, mercury, nickel, radionuclides (thorium), selenium, and zinc were found at the site; that the EPA investigation also established that hazardous substances had been released and threatened to be released from the site; that resultingly, the plaintiff has taken response actions so as to sample, stabilize, and secure the site.

---

**1.** The defendants who have moved for summary judgment are: Commercial Metals Company ("CMC"), G.O. Carlson, Inc. ("Carlson"), Climax Performance Metals, Inc. ("Climax"), J.M. Cousins Company ("Cousins"), Dana Corporation ("Dana"), Dreyfuss Metal Company ("Dreyfuss"), Flowline Corporation ("Flowline"), Luntz Corporation ("Luntz"), IntraAmerican Metals, Inc. ("Intrametco"), Monico Alloys, Inc. ("Monico"), Moskowitz Bros. ("Moskowitz"), Frank H. Nott, Inc. ("Nott"), Omnitek, Inc. ("Omnitek"), Rochester Smelting and Refining Co. ("Rochester"), Theodore Sall, Inc. ("Sall"), Segal & Son, Inc. ("Segel"), and Thalheimer Brothers, Inc. ("Thalheimer").

The plaintiff seeks judgment against the defendants jointly and severally for all costs it incurred in taking response actions related to the site. It also requests a declaratory judgment pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), on liability as to further response costs it may incur, and it seeks recovery of its enforcement costs. The Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 9607 and 9613(b).

Motion for Partial Summary Judgment

In its motion for partial summary judgment, the plaintiff contends that each of the moving defendants is liable under Section 107(a)(3) of CERCLA, as each is a person who by contract, agreement, or otherwise arranged for the disposal or treatment of hazardous substances owned or possessed by them at the site.[2] Specifically, it is alleged that the moving defendants sold and/or sent "scrap" materials to the site; that this "scrap" consisted of used or discarded parts and equipment, waste sludges, or metallic by-products from industrial operations; that said "scrap" contained "hazardous substances" as that term is defined under CERCLA; that although the "scrap" had some residual value, it could not be productively used for its intended purpose without processing[3]; and that since an inherent part of this processing was the creation and disposal of waste, the scrap which the moving defendants sent to the site was ultimately "disposed" of and "treated" there.

In support of its motion, the plaintiff alleges that all of the moving defendants sent materials to the site that contained nickel, chromium, cadmium, copper, lead, selenium, or thorium, and that all of these materials are "hazardous substances" as defined by CERCLA.[4] The plaintiff submits that the moving defendants can be categorized into the following five groups based upon the materials which they sent to the site:

(1) CMC, Luntz and Nott sent used nickel cadmium batteries to the site;

(2) Dana and Climax sent sludges to the site;

(3) Climax sent radioactive scrap to the site;

(4) Carlson, Climax, Flowline, and Omnitek sent scrap materials to the site which were by-products of industrial processes; and

(5) CMC, Cousins, Dreyfuss, Intrametco, Luntz, Monico, Moskowitz, Nott, Rochester, Sall, Segel, and Thalheimer sent scrap to the site which they obtained from third parties.

According to Marvin Pesses, an alleged owner and/or operator of the site[5], it was Metcoa's business to obtain scrap that was not usable for its intended purpose[6], whereupon it would process the scrap (i.e., melt, shear, clean, crush, saw, band, drill, tap, briquette, and/or bale it) so as to make it productive.[7] The record reveals that furnaces were used at the site to process the

---

**2.** Section 107(a)(3) imposes liability on:

any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility owned or operated by another party or entity and containing such hazardous substances ...

42 U.S.C. § 9607(a)(3). To establish a prima facie case under Section 107(a) of CERCLA, the plaintiff must show: (1) that the site is a "facility"; (2) that a "release" or "threatened release" of a "hazardous substance" from the site has occurred; (3) that the release or threatened release has caused the plaintiff to incur response costs; and (4) that the defendants are responsible persons as defined in 42 U.S.C. § 9607(a). *U.S. v. Marisol, Inc.,* 725 F.Supp. 833, 837 (M.D.Pa.1989).

The plaintiff now moves for partial summary judgment as to element four, above, and will move for summary judgment as to the remaining three elements at a future date.

**3.** Metcoa processed the scrap material so as to make alloys therefrom.

**4.** See, 40 C.F.R. § 302.4.

**5.** The alleged owners and/or operators of the site are Marvin Pesses and the Lawrence County Industrial Development Authority, both of whom are defendants herein.

**6.** See, Deposition of Marvin Pesses at pp. 691–92.

**7.** Id. at p. 35; also see, Deposition of J. Harold Johnson (former Vice–President of Sales for Pesses Company) at pp. 669–72.

materials. Nickel cadmium batteries were processed in "retort" furnaces[8], scrap metals were processed in "induction" furnaces[9], and scrap metals and dried sludge were processed in an "exothermic" furnace.[10] All of these furnaces at the site generated air emissions associated with the melting process[11], and the "retort" furnaces operated "around the clock", 24 hours a day.[12] In addition, scrap materials were stored directly on the ground or placed in drums at the site.[13] Scrap stored on the ground would be meshed into the soil[14], and scrap stored in drums would often seep into the ground, as it was Metcoa's practice to punch holes in certain drums that were stored outside.[15] Thus, the plaintiff avers that a disposal and treatment of hazardous substances occurred at the site, and that each of the moving defendants arranged for such disposal and/or treatment ("by contract, agreement or otherwise") when they sent their materials to Metcoa.

## Motions for Summary Judgment

In their motions for summary judgment[16], the moving defendants argue that they did not arrange for the disposal or treatment of hazardous substances at the site. Rather, they contend that they sold and/or sent valuable scrap metal which the operator of the site used as raw material in its manufacturing process or for resale. The moving defendants assert that they did not retain any ownership of, or exercise any control over the materials sold to the site; that since they did not direct how these materials were used, handled, or stored at the site, they did not arrange for the "disposal" of these materials; and that even if the materials which they sold to the site required further processing, such processing did not constitute "treatment" within the meaning of CERCLA. It is the position of the moving defendants that they are not liable under Section 107(a)(3) of CERCLA because in selling scrap material to the site, they sold valuable, useful commodities which Metcoa used in its manufacturing process (to make alloys) or for resale, and that this did not amount to an arrangement for disposal or treatment of hazardous substances.

## Discussion

■ Congress enacted CERCLA to provide the government with authority, through the EPA, to react to threatened environmental risks. It also created a fund, commonly referred to as the "Superfund", to remedy the damages and to ensure the recoupment of past and future response costs, so that no portion of the burden falls on the public. *U.S. v. Shaner*, 20 Chem.Waste Lit.Rep. 1130, 1132–33, 1991 WL 9352 (E.D.Pa.1991). An essential purpose of CERCLA is to place the responsibility for cleaning up the hazardous wastes at a site on those parties who were responsible for causing the disposal of such wastes. *Florida Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1317 (11th Cir.1990) (citations omitted). The Act imposes strict liability and joint and several liability on those responsible parties. *U.S. v. Aceto Agricultural Chemicals Corp.*, 872 F.2d 1373, 1377 (8th Cir.1989); *Shaner, supra*, 20 Chem.Waste Lit.Rep. at 1133.

Under CERCLA's statutory scheme, the term "disposal" is defined in the Resource Conservation and Recovery Act ("RCRA") and incorporated by reference in CERCLA as follows:

8. See, Deposition of Marvin Pesses at p. 59.

9. Id. at pp. 57–58.

10. Id. at 77–79.

11. Id. at pp. 41, 60–61, 79, and 83.

12. Id. at p. 73.

13. Id. at pp. 99–100 and 766–67.

14. Id. at pp. 771–72.

15. Id. at p. 762; also see, Deposition of Alan Rumbaugh (Maintenance Foreman and Plant Manager of the site) at pp. 111–14.

16. We note that all of the moving defendants with the exception of CMC previously moved for summary judgment in this matter, and all of these motions were denied without prejudice in a Report and Recommendation dated March 12, 1991 ("Report") which was adopted as the opinion of the Court on April 15, 1991. CMC previously moved to dismiss the plaintiff's complaint, and that motion was denied in the Report.

The term "disposal" means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

42 U.S.C. § 6903(3) (incorporated at 42 U.S.C. § 9601(29)).

The term "treatment" is also defined in RCRA and incorporated by reference in CERCLA. The term "treatment" is defined in relevant part as follows:

The term "treatment", when used in connection with hazardous waste, means any method, technique, or process, including neutralization, designed to change the physical, chemical, or biological character or composition of any hazardous waste so as to neutralize such waste or so as to render such waste nonhazardous, safer for transport, amenable for recovery, amenable for storage, or reduced in volume.

42 U.S.C. § 6903(34) (incorporated at 42 U.S.C. § 9601(29)).

█ Based upon the record, it would appear that a "disposal" and a "treatment" of "hazardous substances" occurred at the site. The question before us, however, is whether the moving defendants "arranged" for such disposal and/or treatment. In situations as here, where a defendant characterizes its transactions with a party who has disposed of and/or treated its hazardous substances as a "sale" rather than an "arrangement", CERCLA liability may be found in the following circumstances: where a defendant sells its hazardous waste substances and "makes the crucial decision" on how its substances are disposed of or treated, *Jersey City Redevelopment Authority v. PPG Industries,* 655 F.Supp. 1257, 1260 (D.N.J.1987), *aff'd,* 866 F.2d 1411 (3d Cir.1988) (citations omitted); where a defendant retains ownership of its substances and has authority to control the way its substances are treated and/or disposed of, *Aceto, supra,* 872 F.2d at 1383; and where a defendant sells its hazardous substances to a facility with knowledge that the substances will be disposed of there. See, *State of New York v. General Electric Co.,* 592 F.Supp. 291, 297 (N.D.N.Y.1984); also see, *U.S. v. Conservation Chemical,* 619 F.Supp. 162, 240 (D.C.Mo.1985).

Courts have refused to impose CERCLA liability, however, if a party merely sells a product containing a hazardous substance, without additional evidence that the transaction involved an 'arrangement' for the ultimate disposal or treatment of the substance. See, *Edward Hines Lumber Co. v. Vulcan Materials Co.,* 685 F.Supp. 651, 654 (N.D.Ill.1988), *aff'd,* 861 F.2d 155 (7th Cir.1988). Also, if a transaction involves the "sale of a new useful product containing a hazardous substance, as opposed to the sale of a substance merely to 'get rid of it' CERCLA liability may not attach." *Prudential Insurance Company of America v. U.S. Gypsum,* 711 F.Supp. 1244, 1254 (D.N.J.1989) (citations omitted). Thus, a court "must examine the character of the transaction to determine whether or not a statutorily defined disposal has occurred." *Id.*

In this instance, it is not disputed that in most of their transactions with Metcoa, the moving defendants received consideration for their materials. However, "[t]he direction of flow of monetary consideration is not the test of liability under CERCLA ... the relevant inquiry [is] *who decided* to place the waste into the hands of a facility that contains hazardous wastes." *Conservation Chemical, supra,* 619 F.Supp. at 240 (emphasis in original), citing, *United States v. A & F Materials Co., Inc.,* 582 F.Supp. 842 (S.D.Ill.1984).

As set forth in the record, all of the moving defendants sent hazardous substances to the site.[17] It also appears that they sent scrap materials to Metcoa which could not be used for their intended pur-

---

**17.** See, plaintiff's material facts, Nos. 5, 9, 12, 15, 18, 21, 24, 27, 30, 33, 36, 39, 42, 45, 48, 51 (and references to the record in support thereof); plaintiff's material facts against CMC, No. 55; and plaintiff's response to the moving defendants' replies thereto.

pose, i.e., could not be used productively without processing.[18] Marvin Pesses stated that it was Metcoa's business to obtain scrap that was not usable for its intended purpose; and that the only instance when Metcoa received scrap that was usable for its intended purpose was when it received stainless steel tubing from Republic Steel (not a party to this action).[19]

The evidence clearly shows that Metcoa processed the scrap materials which it received so as to make alloys (by "melting, shearing, cleaning, crushing, sawing, banding, drilling, tapping, briquetting, and baling" the materials). This would constitute "treatment" under CERCLA, since Metcoa's processing necessarily acted to:

> ... change the physical, chemical, or biological character or composition of any hazardous waste so as to neutralize such waste or so as to render such waste non-hazardous, safer for transport, amenable for recovery, amenable for storage, or reduced in volume.

42 U.S.C. § 6903(34). Likewise, Metcoa's processing of scrap materials constituted a "disposal" under CERCLA, since, as discussed above, the processing created wastes which were "disposed" of upon the land and in the air.

Although the moving defendants insist that their primary purpose in selling scrap material to Metcoa was to make a profit, not to dispose and/or treat hazardous substances, the intent to dispose is not a requirement under CERCLA. *States v. BFG Electroplating and Manufacturing Co.*, 31 Env't Rep.Cas. (BNA) 1183, 1184, 1990 WL 67983 (W.D.Pa.1990) (citations omitted). Further, although it appears that the moving defendants did not retain ownership of the materials which they sold and/or sent to the site and had no control over how Metcoa handled or stored those materials thereafter[20], liability still attaches in such an instance where there is evidence showing that a defendant is responsible for "otherwise arranging" for the disposal or treatment of a hazardous substance. *Florida Power & Light Co., supra*, 893 F.2d at 1318.[21]

Based upon CERCLA's legislative history, "persons cannot escape liability by 'contracting away' their responsibility or by alleging that the incident was caused by the act or omission of a third party." *BFG, supra*, 31 ERC at 1185, 1990 WL 67983 quoting, *General Electric, supra*, 592 F.Supp. at 297. The relevant inquiry is *who decided* to place the material into the hands of a facility containing hazardous substances. *A & F Materials, supra; Conservation Chemical, supra*.[22] Since all of the moving defendants sent scrap materials to Metcoa which necessarily required processing in order to be productively used, they "arranged" for the treatment and disposal of hazardous substances there.

Summary judgment is appropriate if the pleadings and discovery material, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(c); *Carlson v. Arnot–Ogden*, 918 F.2d 411 (3d Cir.1990). Since it appears that each of the moving defendants "by contract, agree-

---

**18.** See, plaintiff's material facts, Nos. 6, 10, 13, 16, 19, 22, 25, 28, 31, 34, 37, 40, 43, 46, 49, 52 (and references to the record in support thereof); plaintiff's material facts against CMC, No. 56; and plaintiff's response to the moving defendants' replies thereto.

**19.** See, Deposition of Marvin Pesses at pp. 691–92.

**20.** See, Deposition of Marvin Pesses at pp. 1325–1327.

**21.** The term "arrange" is not defined in CERCLA. However, a liberal judicial interpretation of the term is required in order to achieve CERCLA's "overwhelmingly remedial" statutory scheme. *Florida Power & Light Co.*, 893 F.2d at 1317 (citations omitted); *Aceto*, 872 F.2d at 1380 (citations omitted).

**22.** We note that even where a defendant does not select the site at which its wastes were dumped, CERCLA liability may attach. See, *United States v. Wade*, 577 F.Supp. 1326, 1333, n. 3 (E.D.Pa.1983). Thus, moving defendant Climax is not absolved from liability under Section 107(a)(3), notwithstanding its argument that co-defendant Sherritt Gordon Mines Limited was the party who decided to place the materials at Metcoa.

**158**

ment, or otherwise" arranged for the disposal and/or treatment of hazardous substances at Metcoa, they are liable as a matter of law under Section 107(a)(3) of CERCLA.

Therefore, it is recommended that the plaintiff's motion for partial summary judgment be granted, and that the moving defendants be held jointly and severally liable for the past, present and future costs of the environmental response to the deposit of hazardous substances at the Metcoa site.

Dated: December 30, 1991