933 F.Supp. 431 (1996)
GOULD INC., Plaintiff,
v.
A & M BATTERY & TIRE SERVICE, et al., Defendants.
No. 3 CV-91-1714.
United States District Court, M.D. Pennsylvania.
July 15, 1996.
*432 Dennis R. Suplee, Diana S. Donaldson, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, Jacob P. Hart, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, Mark A. Lockett, Philadelphia, PA, John M. Armstrong, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for Gould, Inc.
Donald B. Mitchell, Jr., Laurel A. Bedig, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, for Alexandria Scrap Corporation.
Eugene E. Dice, Harrisburg, PA, for American Scrap Co.
Donald H. Brobst, Robert D. Schaub, Wilkes Barre, PA, Joseph G. Ferguson, Rosenn, Jenkins & Greenwald, Wilkes Barre, PA, Robert N. Gawlas, Jr., Wilkes Barre, PA, for Amsource (Penn Iron & Metal), Capitol Iron & Steel Co., Inc., Garbose Metal, I. Shulman & Son Co., Inc., I. Solomon Metal Co., Inc., J. Sepenuk & Sons, Inc., Liberty Iron & Metal Co., Inc., Louis Cohen & Son Inc., Mongomery Iron & Metal Co., P. Jacobson, Inc., P.K. Scrap Metal Co., Pascap Co., Inc., Penn Harris Metals Corp., Riegel Scrap & Salvage, Weiner Iron & Metal Corp.
Kevin M. Young, Young Stockli & Rowe, Albany, NY, Kristin Carter Rowe, Young Stockli & Rowe, Albany, NY, for B. Millens & Sons, Inc., Cousins Metal, Elman Recycling Co., Louis Kutz & Son.
Michael L. Krancer, Blank, Rome, Comisky & McCauley, Philadelphia, PA, for Bristol Metal Co., Inc.
Howard A. Rubenstein, Adelberg Rudow Dorf Hendler & Sameth, Baltimore, MD, for Brock's Scrap & Salvage.
Robert D. Schaub, Wilkes Barre, PA, Joseph G. Ferguson, Rosenn, Jenkins & Greenwald, Wilkes Barre, PA, Robert N. Gawlas, Jr., Wilkes Barre, PA, for Brookfield Auto Wreckers, Inc.
Donald H. Brobst, Wilkes Barre, PA, for Brookfield Metal Co.
Donald H. Brobst, Robert D. Schaub, Wilkes Barre, PA, Joseph G. Ferguson, Rosenn, Jenkins & Greenwald, Wilkes Barre, PA, Robert N. Gawlas, Jr., Wilkes Barre, PA, William A. Denman, Dover, DE, for Capitol Scrap Iron & Metals.
Donald H. Brobst, Robert D. Schaub, Wilkes Barre, PA, Joseph G. Ferguson, Rosenn, Jenkins & Greenwald, Wilkes Barre, PA, Robert N. Gawlas, Jr., Wilkes Barre, PA, Howard J. Wein, Klett Lieber Rooney & Schorling, Pittsburgh, PA, Paul A. Supowitz, Klett Lieber Rooney & Schorling, Pittsburgh, PA, Hal K. Haveson, Haveson, Otis & Potter, Princeton, NJ, for Charles Bluestone Co., Inc.
K. William Clauson, Clauson Smith Whelan Law Offices, Hanover, NH, for Claremont Metal & Paper Stock.
*433 Donald B. Mitchell, Jr., Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, for Clinton Metal Co., Waldorf Metal Co., Marjol Site Prep Group.
Mark Norman Cohen, Margolis, Edelstein, Scherlis, Sarowitz & Kraemer, Philadelphia, PA, for Commercial Iron & Metal Co.
Donald H. Brobst, Robert D. Schaub, Wilkes Barre, PA, Joseph G. Ferguson, Rosenn, Jenkins & Greenwald, Wilkes Barre, PA, Robert N. Gawlas, Jr., Wilkes Barre, PA, Mark Norman Cohen, Margolis, Edelstein, Scherlis, Sarowitz & Kraemer, Philadelphia, PA, for Crestwood Metal Corp.
Kevin M. Walsh, Wilkes Barre, PA, for Exeter Metals Co.
Joseph R. Solfanelli, Scranton, PA, for Gelb & Co., Inc.
Edward L. Paul, Weinberg and McCormick, Haddonfield, PA, for Giordano Waste Material Co.
Donald H. Brobst, Robert D. Schaub, Wilkes Barre, PA, Joseph G. Ferguson, Rosenn, Jenkins & Greenwald, Wilkes Barre, PA, Robert N. Gawlas, Jr., Wilkes Barre, PA, Mark R. Rosen, Jodi B. Isenberg, Mesirov Gelman Jaffe Cramer & Jamieson, Philadelphia, PA, for B. Millens & Sons Inc.
Steven J. Eisenstein, Roseland, NJ, for Harry Goldberg & Sons.
Ithaca Scrap Processors, Ithaca, NY, Pro Se.
David A. Rockman, Riker Danzig Scherer Hyland & Perretti, Morristown, NJ, for J & J Metals Inc.
Steven E. Snow, Providence, RI, for J. Broomfield & Son, Inc.
Bernard A. Labuskes, Jr., Harrisburg, PA, for Joe Krentzman & Sons.
Edward J. Tolchin, Fettman & Tolchin, Fairfax, VA, Richard Brickwedde, Green & Seifter, Syracuse, NY, for Josh Steel Co.
Richard J. Lippes, Allen, Lippes & Shonn, Buffalo, NY, for Lake Erie Recycling.
Michael Walter Flannelly, Morgan and Flannelly, York, PA, for Larami Metal Co.
Burton D. Tanenbaum, Glenn E. Pezzulo, Culley, Marks, Tanenbaum, Reifsteck, Potter & Capell, Rochester, NY, for Lyell Metal.
Meyer-Saba Metal Co., James Saba, Sr., Kingston, PA, Pro Se.
Stanley P. DeGory, Bonya & Douglass, Indiana, PA, for Morgan Highway Auto Parts.
Donald H. Brobst, Wilkes Barre, PA, for Newburgh Scrap Co.
Daniel A. DeRose, Kehoe & DeRose, Olean, NY, Richard Brickwedde, Green & Seifter, Syracuse, NY, for Olean Steel Sales & Service.
Pascap Co., Inc., Anthony J. Capasso, New York City, Pro Se.
Andrea R. Moore, Buffalo, NY, Christine M. Megna, Jaeckle Fleischmann & Mugel, Buffalo, NY, for R & R Salvage Inc.
Richard Brickwedde, Green & Seifter, Syracuse, NY, for Roth Brothers Smelting Corp.
Thomas E. Starnes, Andrews & Kurth, L.L.P., Washington, DC, Robert N. Steinwurtzel, Swidler & Berlin, Chartered, Washington, DC, for Roth Steel Corporation.
Donald H. Brobst, Robert D. Schaub, Wilkes Barre, PA, Joseph G. Ferguson, Rosenn, Jenkins & Greenwald, Wilkes Barre, PA, Robert N. Gawlas, Jr., Wilkes Barre, PA, Marc E. Kasowitz, Jack Atkin, Mayer, Brown & Platt, New York, NY, Susan M. Lee, Kasowitz Hoff Benson Torres & Fiedman, New York, NY, for S. Kasowitz & Sons, Inc.
Donald H. Brobst, Robert D. Schaub, Wilkes Barre, PA, Robert N. Gawlas, Jr., Wilkes Barre, PA, John R. Embick, Kittredge & Donley, Philadelphia, PA, for Sam Kaufman & Son Metals Co.
Donald H. Brobst, Robert D. Schaub, Wilkes Barre, PA, Joseph G. Ferguson, Rosenn, Jenkins & Greenwald, Wilkes Barre, PA, Robert N. Gawlas, Jr., Wilkes Barre, PA, Sidney Manes, Green & Seifter, Attorneys, P.C., Syracuse, NY, for Timpson Salvage Co., Wallace Steel Inc.
Donald H. Brobst, Robert N. Gawlas, Jr., Wilkes Barre, PA, for United Metal Traders, Inc.
*434 Morgan G. Graham, Buffalo, NY, for Weinstein & Co.
Donald H. Brobst, Robert D. Schaub, Wilkes Barre, PA, Joseph G. Ferguson, Rosenn, Jenkins & Greenwald, Wilkes Barre, PA, Robert N. Gawlas, Jr., Wilkes Barre, PA, Paul H. Rothschild, Springfield, MA, for William F. Sullivan & Co.
Donald H. Brobst, Robert D. Schaub, Robert N. Gawlas, Jr., Wilkes Barre, PA, Gary M. Fremerman, Kelley Drye & Warren, Washington, DC, Daniel M. Steinway, Kelley, Drye & Warren, Washington, DC, for Wimco Metals, Inc.
Richard H. Friedman, Harrisburg, PA, for Joint Defense Group.
James A. Humphreys, III, Michael W. Davis, Barley Snyder Senft & Cohen, Lancaster, PA, for Micro Group.
Michael H. Malin, White & Williams, Philadelphia, PA, Robert Toland, II, White & Williams, Philadelphia, PA, for White & Williams Defense Group.
Richard Brickwedde, Green & Seifter, Syracuse, NY, for Marjol Site De Minimus Scrapdealers Group.
Kelly H. Scoffield, Harry B. Wright, Exxon Company, U.S.A., Houston, TX, for Exxon, Inc.

MEMORANDUM AND ORDER
CONABOY, District Judge.
Presently before the Court is Plaintiff Gould's motion for partial summary judgment against certain defendants.[1] Gould moves for partial summary judgment against the battery supplier defendants on the basis that each defendant arranged for the disposal or treatment of a hazardous substance at the site at which Marjol and Gould operated a battery-breaking and lead-reclamation facility. Gould's motion for partial summary judgment seeks a determination from this Court that each defendant is liable under Section 107(a)(3) of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9607(a).
For the reasons which follow, Gould's motion for partial summary judgment against the defendants will be granted. This determination will not affect defendants Smith Iron & Metal Co., Inc., or Louis Mack Co., Inc., both of whom Gould withdrew its motion for partial summary judgment. Furthermore, we are unpersuaded by the determination of the United States District Court for the Southern District of Alabama which declared CERCLA unconstitutional as it purports to impose retroactive liability.

BACKGROUND
In December 1991, Plaintiff Gould initiated this action by filing a complaint against various Defendants seeking recovery pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, et seq., for costs incurred and to be incurred to cleanup contamination at the Marjol Site located in the Borough of Throop, Lackawanna County, Pennsylvania.
Marjol Battery & Equipment Company operated a battery-breaking operation in Throop, Pennsylvania from 1963 until May 1980 when Gould acquired the stock of the company. Gould operated the battery-breaking operations until April 1981 when it shut down its battery-breaking operations.
In September 1982, the Pennsylvania Department of Environmental Resources ("DER") advised Gould that no remediation *435 would be necessary and no enforcement actions would be taken at the site unless battery-breaking operations resumed. However, the EPA began investigating the Marjol Site in 1987 and after performing preliminary tests, concluded that there may be "an imminent and substantial endangerment to the public health, welfare or the environment."
In April 1988, the EPA and Gould entered into a Consent Agreement and Order pursuant to § 106(a) of CERCLA, 42 U.S.C. § 9606(a), to conduct site stabilization activities concerning lead and other hazardous substances at the Marjol Site and other residential properties.
In May 1990, Gould entered into a second consent order, this one with both the EPA and DER. This order was based on the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6928(h). Pursuant to this second consent order, Gould agreed to perform a RCRA Facility Investigation and Corrective Measure Study ("CMS") at the Marjol Site. EPA is currently evaluating Gould's CMS, and will ultimately select a final remedy for the Marjol Site.

DISCUSSION
Summary Judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).
[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing of an essential element of her case with respect to which she has the burden of proof.
Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).
The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. He or she can discharge that burden by "`showing' ... that there is an absence of evidence to support the nonmoving party's case." Celotex, supra, 477 U.S. at 325, 106 S.Ct. at 2553-54.
Issues of fact are "`genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-694 (3rd Cir.1988) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986)). Material facts are those which will affect the outcome of the trial under governing law. Anderson, supra, 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the nonmoving party. White v. Westinghouse Electric Co., 862 F.2d 56, 59 (3rd Cir.1988).
This Court has previously held on several occasions that a party that sells junk batteries to a battery-breaking company faces arranger liability under CERCLA. Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3) states as follows:
(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, ...
Accordingly, our first determination is to expressly reject Defendants' arguments that they cannot be liable under CERCLA Section 107(a)(3) because their junk batteries were not "solid waste". Defendants would *436 have this Court believe that only the disposal or treatment of "solid waste" triggers liability, and that batteries are not solid waste. However, the language of CERCLA is clear and concise regarding arranger liability. Section 107(a)(3) speaks in terms of hazardous substances, not just "solid waste". There can be no arguments advanced that lead is not a hazardous substance and therefore, all defendants who contributed junk batteries to the Marjol Site are liable pursuant to Section 107(a)(3).
For purposes of the instant motion for partial summary judgment, we hold that the sale of junk batteries to a battery recycling facility constitutes an arrangement for disposal or treatment of a hazardous substance.[2]
Defendants have also addressed arguments based primarily on the useful product defense as well as the indirect seller defense. Certain Defendants have asserted arguments which pertain only to their individual circumstances, while others have raised the issue concerning the constitutionality of CERCLA's retroactive aspects. We will address each of the arguments below.

Useful Product
Defendants contend that liability under Section 107(a)(3) of CERCLA may not be imposed in connection with the sale of a useful product for a useful purpose. Initially, we must state our disagreement with Defendants' position. Defendants argue that a battery is a useful product and the sales of batteries to obtain lead byproducts constitute a useful purpose. However, while some useful purpose may result from the sale of an ordinary battery, in the instant case the battery sales were not for its originally intended purpose.
The test for successfully asserting what has become known as the "useful product" defense is whether the commodity being sold will continue to be used for its originally intended purpose. Catellus Dev. Corp. v. United States, 34 F.3d 748 (9th Cir.1994). The distinction between the sale of a useful product and the sale of scrap batteries for purposes of CERCLA liability was explained in Chatham Steel Corp. v. C. Brown, 858 F.Supp. 1130 (N.D.Fla.1994) as follows:
When a party sells a product incidentally containing a hazardous substance but having value as being useful, for the purpose for which it was manufactured, then the transaction is less likely to be an "arrangement" to dispose of a hazardous substance ... In these cases, the party receiving the product will use the product in the manner for which it was manufactured ... On the other hand, if a product has no value for the purpose for which it was manufactured and it contains a hazardous substance, then it is more likely the sale is an "arrangement" to dispose of the substance ... In the case sub judice, the products at issue were spent lead acid batteries. Contrary to the claims of some defendants, the record does not indicate the batteries ... purchased from Defendants were capable of being used as batteries  i.e., they could supply electric current. Rather, the batteries only had value because of the lead they contained. Instead of dealing in a "useful" product, Defendants essentially trafficked in a hazardous substance. This is precisely the type of transaction CERCLA covers.
858 F.Supp. at 1140 (citations and footnote omitted).
The facts in the instant matter make it clear that the Marjol/Gould Site was not a used car lot. The Site was for the purposes of reclaiming lead from used batteries. Each of the Defendants has failed to demonstrate that the batteries it sold to Marjol/Gould were used for their intended purpose. It appears evident that the batteries were not used for their intended purpose, starting vehicles, but rather for the arrangement of a hazardous substance.

*437 Indirect Seller

Defendants oppose Gould's motion for summary judgment on the grounds that they were indirect sellers and had no control over how batteries they sold to brokers would be disposed. Evidence to date establishes that the Defendants knew the destination of their battery sales and the batteries ended up at the Marjol Site.[3] Accordingly, any arguments advanced by Defendants stating their lack of knowledge to Marjol/Gould's operations or arguments asserting sales only through battery brokers will be rejected.
In Chesapeake & Potomac Tel. Co. v. Peck Iron & Metal Co., 814 F.Supp. 1293 (E.D.Va. 1995), the court denied summary judgment to two CERCLA defendants who sold through middleman, where the end-consumer picked up and transported the batteries directly from the suppliers' sites to the site of treatment and/or disposal. In denying their motions for summary judgment, the court stated:
Purposeful ignorance cannot act as a shield to CERCLA liability. All of these defendants were in possession of information which alerted, or should have alerted, them to the fact that the brokers with whom they were doing business had consigned their batteries to [a battery-breaking operation at the site]. Their continued sale of batteries to these entities, after obtaining this knowledge, amounts to a decision on their part to send batteries to [the site].
Additionally, any arguments made by the Defendants that they lacked control or knowledge of where its batteries were being sent must be rejected. Courts have not allowed battery suppliers to escape liability by "playing dumb" about how their hazardous waste are disposed. See, United States v. Pesses, 794 F.Supp. 151 (W.D.Pa.1992); Chatham Steel Corp. v. Brown, 858 F.Supp. 1130 (N.D.Fla.1994).

Individual Arguments

A. A. Shapiro & Sons

This Defendant argues that its battery sales to Marjol did not go to the Marjol Site but to some other site. Defendant Shapiro does not claim that all of the batteries he sold to Marjol were shipped to another site, but just a percentage of batteries. In light of Anthony Bonadio's testimony that less than one percent of the batteries sold to Marjol went to other sites, Defendant Shapiro has not presented evidence which would absolve itself from Section 107(a)(3) liability. Accordingly, A. Shapiro & Sons are liable under CERCLA Section 107(a)(3) for arranger liability.

B. Acme Metals & Recycling

Despite being a member of one of the three defense groups that have filed an opposition brief to Gould's motion, Acme has filed a separate brief in opposition to Gould's motion. On June 17, 1996, we issued a Memorandum and Order which denied Acme's motion for summary judgment. For the reasons stated in our June 17, 1996, Memorandum and Order and the fact that there is evidence which indicates that Acme sold used batteries to Gould, Defendant Acme Metals & Recycling is liable under CERCLA Section 107(a)(3).

C. Alexandria Scrap Corporation

Alexandria Scrap contends that defendants who sell only "soft lead" as opposed to spent lead-acid batteries are not liable as arrangers under CERCLA. Based on the deposition of Stanley J. Asrael, this Defendant also sold scrap batteries to Marjol. Therefore, having admitted selling scrap batteries to Marjol, Alexandria Scrap Corporation is liable under CERCLA Section 107(a)(3) for arranger liability.

D. Ithaca Scrap Processors

Ithaca Scrap contests the amount of transactions it is attributed in dealing with Marjol. However, as we indicted previously in this Memorandum and Order, issues on allocation will be decided upon the conclusion of the *438 liability stage of the proceedings. Ithaca Scrap doesn't claim that it never sold batteries to Marjol and thus Gould's motion for partial summary judgment as it relates to arranger liability will be granted against Ithaca Scrap Processors.

E. Joe Krentzman & Sons

This defendant, although filing a brief in opposition to Gould's motion, admits to selling batteries to Marjol or Gould. Thus Gould's motion for partial summary judgment against Joe Krentzman & Sons will be granted.

F. Loni-Jo Metals f/t/a Attinito Recycling Corporation

This Defendant admitted to selling batteries in its sworn interrogatory answers in August 1995. The evidence establishes that Loni-Jo Metals has assumed the liabilities of Attinito Recycling Corporation. Attinito's junk battery sales to Marjol/Gould have never been disputed and thus Loni-Jo Metals is liable under Section 107(a)(3) for arranger liability.

G. William F. Sullivan Co., Inc.

This Defendant, in its interrogatory answers to Gould, admitted to selling used batteries to Marjol/Gould. Now, the current chief executive officer claims he lacks memory of battery sales prior to 1984. This lack of memory does not supplant Sullivan Co.'s previous admission of battery sales. Therefore, William F. Sullivan Co., Inc. is liable under Section 107(a)(3) for arranger liability.

CERCLA'S Retroactive Application
Several of the moving Defendants cite United States v. Olin Corp., 927 F.Supp. 1502 (S.D.Ala.1996), for the proposition that the liability provisions of CERCLA do not impose liability upon parties for actions taken prior to the adoption of CERCLA by Congress, which occurred on December 11, 1980. Nevertheless, this is the only Court to date to hold that CERCLA does not apply retroactively. Several courts, including the Third Circuit, have addressed the issue of CERCLA'S retroactivity. See, In the Matter of Penn Central, 944 F.2d 164 (3rd Cir.1991). Furthermore all of the cases this Court has cited in rejecting Defendants liability arguments have applied CERCLA retroactively without formally ruling on the issue.
Accordingly, we are unpersuaded by a single Alabama District Court case which is surrounded by a myriad of opinions that apply CERCLA retroactively, either directly or implicitly. Thus, we will reject Defendants arguments on retroactivity grounds.

CONCLUSION
For the reasons indicated above, Plaintiff Gould's motion for partial summary judgment against the various Defendants on Section 107(a)(3) arranger liability will be granted.
NOTES
[1] Gould is moving for partial summary judgment against eighty-six (86) defendants. By Order dated June 3, 1996, Gould's request to withdraw its motion for partial summary judgment against Smith Iron & Metal Co., Inc., was granted. Furthermore, in its reply brief in support of its motion for partial summary judgment, Gould withdraws its motion against another defendant, Louis Mack Co., Inc. Accordingly, Louis Mack Co. will not be included in Gould's partial summary judgment motion. Nearly all of the defendants named in Gould's motion are members of either the Rosenn Jenkins Joint Defense Group, Marjol Site PRP Group, or the DeMinimis Scrap Dealers' Group. However, several other defendants, not members of a defense group, have filed opposition briefs to Gould's motion. The majority of the defendants have asserted similar arguments in their opposition to Gould's motion for partial summary judgment. Accordingly, throughout our Memorandum opinion we will refer to the parties as Gould or Defendants and only refer to a specific defendant when an argument unique to that defendant is presented.
[2] During the current stage of the instant litigation, we are trying to determine whether or not defendants are liable under CERCLA Section 107(a)(3). That is, whether a defendant contributed to the harm caused at the former Marjol Site by arranging for its junk batteries to be brought to the Marjol Site. We are not however, making any determination at this time with regards to the respective amount of each defendant's harm. The respective harm or allocation of each defendant's share of responsibility will commence upon completion of the liability stage of this action.
[3] This Court previously cited the deposition testimony of Anthony Bonadio, Marjol's Plant Manager. Mr. Bonadio testified that less than one percent of the scrap batteries Marjol purchased were delivered to a site other than the Marjol Site. See Memorandum and Order dated May 30, 1996. Doc. No. 1237.