**UNITED STATES of America,
Plaintiff,**

**v.**

**Marvin PESSES, et al., Defendants.**

**No. Civ.A. 90–654.**

United States District Court,
W.D. Pennsylvania.

March 21, 2000.

Robert L. Eberhardt, United States Attorney's Office, Pittsburgh, PA, Robert C. Goodman, United States Department of Justice, Environment & Natural Resources Division, Carl Strass, United States Department of Justice, Patricia Ross McCubbin, United States Department of Justice, Environmental Defense Section, Washington, DC, for U.S.

Anthony P. Picadio, Picadio, McCall, Kane & Norton, Pittsburgh, PA, for Marvin Pesses.

Joseph V. Bullano, New Castle, PA, for Lawrence County Industrial Development Authority.

Andrew M. Stone, Stone & Stone, Pittsburgh, PA, Laura B. Ahearn, James R. Wrathall, Wilmer, Cutler & Pickering, Washington, DC, for AVCO Corp., Sherritt Gordon Mines, Ltd.

Thomas C. Reed, Buchanan Ingersoll, Pittsburgh, PA, for CKE, Inc.

William M. Dallas, Jr., Sullivan & Cromwell, New York, NY, Antoinette R. Stone, Raymond McGarry, Richard W. Hayden, Buchanan Ingersoll, Philadelphia, PA, for Climax Performance Materials, Inc.

Joseph A. Tate, Alison M. Benders, Stephen A. Brown, Dechert, Price & Rhoads, Philadelphia, PA, David A Sudbury, James L. Aubuchon, Dallas, TX, for Commercial Metals Co.

Ronald L. Hicks, P. Christian Hague, Meyer, Unkovic & Scott, Pittsburgh, PA, Martha Koster, Lee Glickenhaus, Jeffrey R. Porter, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, Boston, MA, for Dana Corp.

Michael R. Turoff, Arnstein & Lehr, Chicago, IL, for Dreyfuss Metal Co.

Joseph R. Brendel, David G. Ries, Thorp, Reed & Armstrong, Pittsburgh, PA, for Flowline Corp.

Robert A. Emmett, Reed, Smith, Shaw & McClay, Washington, DC, for G. O. Carlson, Inc., Intra–American Metals, Inc., J. M. Cousins, Co., Thalheimer Bros., Inc.

Michael A. Centanni, Gould Inc., Eastlake, OH, for Gould, Inc.

Joseph S.D. Christof, II, Peter T. Stinson, Dickie, McCamey & Chilcote, Pittsburgh, PA, for Luntz Corp.

William M. Wycoff, Randolph T. Struk, Thorp, Reed & Armstrong, Pittsburgh, PA, Lois Ellen Gold, UNOCAL, Los Angeles, CA, for Molycorp, Inc.

Curtis A. Westfall, Hill, Farrer & Burrill, Los Angeles, CA, for Monico Alloys, Inc.

Jeffrey J. Harmon, Cors & Bassett, Cincinnati, OH, for Moskowitz Brothers, Inc.

Richard Henderson, Motorola Law Dept., Washington, DC, Christopher P. Davis, Goodwin, Prother & Hoar, Boston, MA, for Motorola, Inc.

Patrick M. Raher, David F. Grady, Stephen G. Vaskov, Washington, DC, for Frank H. Nott, Inc.

Daniel I. Sheridan, Shanley & Fisher, Morristown, NJ, Schaff, Motiuk, Cladstone & Reed, Flemington, NJ, Craig S. Provorny, Herold & Haines, Warren, NJ, for Omnitek, Inc.

Philip G. Spellane, Harris, Beach & Wilcox, Rochester, NY, for Rochester Smelting and Refining Co., Inc.

Howard J. Wein, Michael J. Manzo, Klett, Lieber, Rooney & Schorling, Pittsburgh, PA, for Segel & Son, Inc.

Richard T. Buchanan, Patrick T. Ryan, Gary D. Ammon, Bonnie Allyn Barnett, Adam M. Kushner, Michael K. Sullivan, Drinker, Biddle & Reath, Philadelphia, PA, for Union Carbide Corporation.

Brenda J. Joyce, Jaeckle, Fleischmann & Mugel, Buffalo, NY, Paul Falick, ICC Industries, Inc., New York, NY, for ICC Industries, Inc.

Charles C. Casalnova, John R. O'Keefe, Jr., Kincaid, McGrath & O'Keefe, Pittsburgh, PA, R. Bradford Fawley, Alfred E. Smith, Jr., Michael Petropoulos, Michael J. Donnelly, Murtha, Cullina, Richter & Pinney, Hartford, CT, for Suisman and Blumenthal.

John A. Scaldara, Wright, Constable & Skeen, Baltimore, MD, John A. Scaldara, Donald J. Walsh, Scaldara & Potler, Baltimore, MD, for Locust Industries Ltd.

John Michael Slogar, Gillis & Slogar, Houston, TX, for Minor Metals, Inc.

John Stanley Hoffman, David B. Wrinkle, Sheffer Hoffman, Henderson, KY, for Tungco Co.

*FINDINGS OF FACT AND
CONCLUSIONS OF
LAW*

ZIEGLER, Chief Judge.

(1) This is a civil action for money damages and equitable relief filed by the United States against 28 defendants for the recovery of costs and expenses related to the treatment, removal and disposal of hazardous substances at the Metcoa Radiation Site located at Pulaski, Pennsylvania.

(2) Jurisdiction is based on 42 U.S.C. §§ 9607 and 9613(b), and 28 U.S.C. §§ 1331, 1345 and 1367. Venue is appropriate in this court based on 28 U.S.C. § 1391(b).

(3) At all relevant times, Marvin Pesses was a major shareholder of Metcoa, Inc. Pesses was an operator of the site within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), due to his substantial ownership of Metcoa and because he exercised control over the operations of the company.

(4) The site was used by Metcoa between 1975 and 1983 to process scrap metal, waste sludge, radioactive materials and nickel cadmium batteries. Various metals were then removed from these materials, and hazardous substances were stored at the site before and after the materials were processed by Metcoa.

(5) In 1986, the Environmental Protection Agency determined that approximately three thousand 55–gallon drums containing hazardous substances, many leaking and deteriorating, were at the site. These hazardous substances included cadmium, chromium, copper, lead, magnesium, mercury, nickel, thorium and zinc, some of which had been released into the air, soil and water. The site also contained elevated levels of radiation.

(6) The United States incurred substantial response costs and expended funds to investigate, stage, sample, stabilize and secure the site. The instant civil action was filed by the United States asserting that the defendants were jointly and severally liable for the costs pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a). Defendants then filed original and amended third party complaints against 195 third party defendants.

(7) After extensive settlement negotiations, the United States reached a settlement with various defendants and a consent decree was signed by the court on June 19, 1997. Thereafter, the parties were realigned, "cash out" parties were dismissed, and the Settling Parties filed an amended complaint.

(8) The Settling Parties asserted various claims for contribution against the non-settling parties based on CERCLA, the Pennsylvania Hazardous Sites Clean–Up Act, 35 P.S. § 6020.101, and common law. On August 31, 1998, the district court granted partial summary judgment for the Settling Parties at Count II, based on Section 113 of CERCLA, on the issue of liability against third party defendants, Bay Metal, Inc., ICC Industries, Inc., Lake City, Inc., M. Berkowitz & Co., Inc., Molycorp, Inc., and Oregon Metallurgical, Inc. The motions of the third party defendants for judgment were granted against the Settling Parties at Counts I, III, V and VI of the amended complaint.

(9) The Settling Parties reached an amicable settlement with the above third party defendants, with the exception of Bay Metal, Inc. The action for contribution by the Settling Parties proceeded to trial against Bay Metal before this member of the court.

(10) In this civil action for contribution based on Section 113 of CERCLA, each of the Settling Parties bear the burden of establishing a reasonable basis for apportioning liability upon Bay Metal, Inc., and the third party plaintiffs bear the burden of proving the elements of their claims, including causation, by a preponderance of the evidence. *United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 270 n. 29 (3d Cir.1992).

(11) The evidence preponderates that the Settling Parties incurred $10,023,015.36 in site investigation and re-moval (response) costs, which we find are recoverable, reasonable and consistent with the National Contingency Plan and CERCLA, 42 U.S.C. § 9613.

(12) The settlement of claims embodied in the Consent Decree was based primarily on the weight of the materials, toxicity and contribution to the harm at the site. The settlement is fair, reasonable and consis-tent with the public interest.

(13) The response costs incurred at the site arose in response to and were caused by the processing of materials by Metcoa which produced the commingled waste ma-terials at the site. The response actions were required and the evidence prepon-derates that the response costs incurred cannot be apportioned separately based on a particular type of metal.

(14) Various hazardous substances locat-ed at the site were present due to the processing of materials by the Pesses Company and Metcoa, and were purchased from sources which included Bay Metal. *U.S. v. Pesses,* 794 F.Supp. 151, 154 (W.D.Pa.1992).

(15) Hazardous substances at the site were metals entrained in slag and dust which were discarded waste products of smelting operations conducted by Metcoa. No discrete materials were identified as belonging separately to any of the parties to this civil action during the site investiga-tion, studies and removal activities. The slag and dust at the site after Metcoa's processing were commingled into an indi-visible mass of waste materials.

(16) Metcoa originally possessed a li-cense from the Nuclear Regulatory Com-mission to handle radioactive materials during the time of the transactions with Bay Metal and the license was a public record.

(17) Pursuant to an administrative order issued by the EPA in 1990, some of the Settling Parties performed site investiga-tion and removal activities with respect to the hazardous substances present at the site, while other Settling Parties per-formed additional site stabilization in 1989 pursuant to an administrative order on consent.

(18) The Settling Parties performed ad-ditional site investigation and removal ac-tions at the site pursuant to the Consent Decree entered into with the United States and approved by this Court in an order dated June 19, 1997.

(19) Pursuant to the Consent Decree, the Settling Parties participated in remov-al of contaminants at the site and reim-bursed the United States for $1.95 million in past costs and reimbursed other parties who performed the work.

(20) The costs incurred by the Settling Parties, which are recoverable under CERCLA, are reasonable and consistent with the National Contingency Plan. The recoverable costs are as follows, preceded by the type:

(a) Reimbursement of EPA past costs pursuant to the Consent Decree—$1,950,000;

(b) Administrative Order—GSX Laid-law—$3,408,749.13;

(c) Administrative Order—ENSR Con-structors—$97,672.93;

(d) Administrative Order—de maxi-mus—$417,232.55;

(e) Consent Decree—CEC Consul-tants—$2,022,468.07;

(f) Consent Decree—OHM Consul-tants—$1,925,331.28; and

(g) Consent Decree—WCX Consul-tants—$201,543.40.

(21) The evidence preponderates that the expenses total $10,023,015.36

(22) In its evaluation of the remediation requirements at the site, the EPA consid-ered the number of metals, including met-als which may have originated from mate-rials sent to the site by Bay Metal.

(23) The metals targeted by the EPA for site investigation and for clean-up included nickel, which was sold by Bay Metal to Metcoa.

(24) The evidence preponderates that, during the period of operation of the site by Metcoa, Bay Metal was a substantial contributor of metals leading to the classification of Bay Metal as the sixth largest contributor (by weight) to the site of the parties to this litigation.

(25) Other parties were found liable by the court although they did not contribute nickel, cadmium or thorium to the site.

(26) Pursuant to a court sanctioned allocation development process, TLI Systems, Inc. was retained to compile a database, which included sales orders, purchase sheets, gate log entries, material types, and assumed weights of materials. The assumptions were based on the history and usage by companies involved at the site.

(27) Bay Metal did not dispute the weights or assumptions used in the TLI database.

(28) TLI's database considered allocation factors which are known as Gore Factors such as volume (by weight), site conditions and toxicity of materials. The database reflects volumes (by weight) of materials transported to the site. The database became the basis of a settlement among the parties.

(29) Matthew Low prepared a database which considered the relative contributions (by weight), and the fact that the removal was performed due to the generation and commingling of waste materials while Metcoa was processing the metals at the site. He concluded that the database was a reasonable basis for the allocation of the costs.

(30) The evidence preponderates that Bay Metal declined to participate in any remediation work at the site, objected to the entry of the Consent Decree by which other parties performed remediation response actions at the site, and declined to participate in the Consent Decree after the court determined that Bay Metal was a liable party under CERCLA.

(31) Bay Metal failed to perform any due diligence with respect to the operations of the Metcoa site such as (a) a representative of Bay Metal only visited the site five years after the transactions began; (b) Bay Metal never toured the site, (c) Bay Metal failed to review or request information regarding the Nuclear Regulatory Commission license; (d) Bay Metal failed to contact either the Pennsylvania Department of Environmental Protection, or the Department of Health concerning the site; and (e) Bay Metal had no knowledge of the environmental compliance reputation of the facility.

(32) Patrick O'Hara, an expert witness for Bay Metal, acknowledged that materials at the site were commingled and physically indivisible, thereby agreeing with the testimony for the Settling Parties regarding the lack of divisibility and the extensive commingling of hazardous substances present on the site. In fact, Mr. O'Hara testified that he was unaware of any materials removed from the site which did not include a mixture of a variety of metals.

(33) In response to the testimony of Settling Parties' witnesses Matthew Low and Kenneth Miller, Bay Metal presented Patrick O'Hara and Kenneth Wise. Mr. O'Hara's testimony regarding both site conditions and division of costs, included the following:

(a) Hazardous substances were commingled at the site and could not be physically divided.

(b) In its orders and assessment of health risks at the site, the EPA did not identify any risk based upon whether a material was a "Hazardous Waste," the disposal of which is governed by the Resource Conservation and Recovery Act, 42 U.S.C. 6901 *et. seq.*, but rather evaluated the risks associated with the exposure to numerous substances at the site.

(c) During its evaluations, the EPA identified numerous metals which were classified as hazardous substances under CERCLA and reviewed exposure scenarios associated with those metals in assessing the risks at the site.

(d) Mr. O'Hara did not review, in connection with his opinion:

(i) The EPA's past costs;

(ii) The costs incurred by some of the Settling Parties to comply with the 1990 administrative order; and/or

(iii) Study and testing costs.

(34) Dr. Wise relied upon Mr. O'Hara's testimony regarding disposal costs in developing a percentage of costs assignable to Bay Metal. His opinion:

(a) Failed to refute or dispute either the weights assigned to any parties in TLI's database or Mr. Low's testimony;

(b) Failed to include a financial review of the EPA costs or the costs incurred by some Settling Parties with respect to the 1990 administrative order;

(c) Failed to consider any of the contributions of any other parties at the site other than Bay Metal and the alleged thorium contributors;

(d) Failed to consider the increase in volume of wastes due to commingling;

(e) Did not consider the fact that the EPA added nickel and cadmium to develop the health risk level;

(f) Did not review other companies' contributions as to category of costs that fit within in his calculation of a share for the so-called "nickel parties";

(g) Was based in economic theory and not on any of the Gore factors; and

(h) Advanced a theory that has not been judicially accepted in any other CERCLA action.

■ (35) The burden of showing the divisibility of costs in a CERCLA action is upon the party asserting a defense to liability. *United States v. Rohm and Haas Co.*, 2 F.3d 1265, 1280 (3d Cir.1993). Bay Metal has failed to sustain its burden by a preponderance of the evidence.

■ (36) The evidence preponderates that the response costs incurred at the site arose in connection with the processing of materials by the Pesses Company (Metcoa), which led to the commingled waste materials at the site. The response actions were necessary and the response costs are incapable of separate apportionment by party based on a particular metal type.

(37) Bay Metal's proposed allocation is neither consistent with its treatment of the parties nor reasonable because it advocates an assessment for metal types, but does not consider the fact that the materials were commingled and incapable of segregation.

(38) Bay Metal's proposed allocation is unreasonable because it fails to consider the material types transported by other companies, in spite of the fact that Bay Metal advocates that allocation shares should be based on metal types.

(39) The evidence preponderates that, using the so-called Gore factors of contribution to the harm, toxicity of the waste volume (by weight), and cooperation with the government by the Settling Parties, judgment must be entered against Bay Metal in the amount of $1,495,267, with interest commencing on the date of this judgment.