The STATE OF CALIFORNIA, on behalf of the STATE DEPARTMENT OF TOXIC SUBSTANCES, Plaintiff,

v.

SUMMER DEL CARIBE, INC.; Dale E. Summer, an individual; Lynn J. Rodich, an individual; American National Can Co.; Beatrice Hunt/Wesson; Continental Can Co.; Crown Cork and Seal Co., Inc.; Del Monte Corp.; Castle & Cooke;

---

Gencan Packaging, Inc.; Kern Foods Liquidating Trust; Nestle Food Corp.; Silgan Container Corp.; Pan Pacific Fisheries, Inc.; Pacific Coast Producers; Progresso Foods, Inc.; Starkist Foods, Inc.; The Sherwyn-Williams Co.; Tri-Valley Growers Container Division, Inc.; United States Can Co.; TMA/Noracal, Defendants.

No. C-89-3754 SAW.

United States District Court, N.D. California.

April 15, 1993.

Daniel Lungren, CA Atty. Gen., Susan Fiering, Deputy Atty. Gen., Oakland, CA, for plaintiff.

Pillsbury, Madison & Sutro, Sarah Flanagan, James Meeder, James Wyatt, Beveridge & Diamond, George Wolff, San Francisco, CA, Robert Crow, Boornazian, Jensen & Garthe, Oakland, CA, James P. Bennett,

Kevin Haroff, Morrison & Foerster, San Francisco, CA, for defendants.

## MEMORANDUM AND ORDER

WEIGEL, Senior District Judge.

### BACKGROUND:

Plaintiff sues Defendants for the cost of an environmental cleanup under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et seq.* ("CERCLA"). Defendants are seventeen can companies, a metal reclamation facility, two individual officers of that facility, and a corporation that operated a site adjacent to the facility. The Court stayed the action against all Defendants except Summer del Caribe, Inc., Dale Summer, Lynn Rodich, and Castle & Cooke pending the results of an investigation into the nature and extent of contamination at the site. The parties stipulated to stay the action against Summer del Caribe and Dale Summer.[1] The remaining Defendant is Castle & Cooke ("Defendant").

Defendant manufactures cans. As a by-product of its can manufacturing process, Defendant generates "solder dross." One-third of the material comprising solder dross can be reclaimed and reused as solder. The remaining two-thirds are an unusable material containing high levels of lead and zinc compounds.

From 1975 to mid–1982, Defendant sold its solder dross to Summer del Caribe ("Summer"), which operated a metal reclamation facility in Richmond, California. Summer melted the solder dross to reclaim and resell the reusable portion. The unusable remainder of the solder dross was placed in drums and stored at Summer's facility. The drums remained on the site from 1975 through 1982. By late 1982, the drums had corroded and solder dross was leaking onto Summer's site. Subsequently Summer buried some of the solder dross drums on its site.

Plaintiff learned of Summer's storage and burial of the drums in late 1982. Test samples taken by Plaintiff in December 1982 showed that the buried and unburied solder dross drums contained hazardous levels of zinc and lead. Since that time Plaintiff has spent over $1.6 million to clean up the site. Plaintiff sues to recover these cleanup costs.

In a motion for summary judgment, Plaintiff sought a determination that, by selling a manufacturing by-product containing hazardous material to the metal reclamation facility, Defendant arranged for the "disposal or treatment" of a "hazardous substance" within the meaning of CERCLA, and is therefore liable for the cleanup costs under CERCLA § 107(a)(3), 42 U.S.C. § 9607(a)(3). In a cross motion for summary judgment, Defendant sought a determination that it was not liable for cleanup costs under CERCLA.

On June 30, 1992, the Court granted summary judgment for Defendant. Relying on its reading of *3550 Stevens Creek Associates v. Barclays Bank of California,* 915 F.2d 1355 (9th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2014, 114 L.Ed.2d 101 (1991), the Court determined that a substance must be a "hazardous waste" under the Solid Waste Disposal Act ("SWDA") in order for "disposal" or "treatment" liability under CERCLA to attach. Because the Court concluded that the solder dross Defendant sold was not a hazardous waste within the meaning of the SWDA, it ruled that Defendant cannot be subject to disposal liability under CERCLA § 107(a)(3).

Plaintiff now moves for reconsideration of the June 30, 1992 order.

### DISCUSSION:

 The Court has discretion to reconsider interlocutory orders at any time prior to final judgment. *Nobell v. Sharper Image Corp.,* 1992 WL 421456, at * 6, 1992 U.S.Dist. LEXIS 20114, at * 1 (N.D.Cal. June 12, 1992); *Combs v. Nick Garin Trucking Co.,* 825 F.2d 437, 441 (D.C.Cir.1987). Such motions may be justified on the basis of an intervening change in the law, or the need to correct a clear error or prevent manifest injustice. *Pyramid Lake Paiute Tribe of Indians v. Hodel,* 882 F.2d 364, 369 n. 5 (9th

---

1. The record does not reflect a stay against Lynn Rodich. However, because Mr. Rodich was an officer of Summer del Caribe and no further proceedings against him have gone forth, it appears the action against him has also been stayed.

Cir.1989), discussing 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4478 at 790. To succeed in a motion to reconsider, a party must set forth "facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Steiny and Co., Inc. v. Local Union 6, Int'l Brotherhood of Electrical Workers,* 1991 WL 516835, at * 2, 1991 U.S.Dist. LEXIS 18804, at * 5 (N.D.Cal. Dec. 19, 1991) (citing *Great Hawaiian Fin. Corp. v. Aiu,* 116 F.R.D. 612, 616 (D.Haw.1987)).

In arguing for reconsideration, Plaintiff alleges that the Court's determination that a substance must be a "hazardous waste" under the SWDA in order for disposal liability under CERCLA to attach, is inconsistent with the decisions of the other courts that have addressed this issue and with the Congressional intent in enacting CERCLA. Plaintiff asserts that *Stevens Creek* does not require that a substance be a hazardous waste under the SWDA for CERCLA liability to attach. Plaintiff further contends that requiring a substance to be a hazardous waste under SWDA before imposing CERCLA liability will undermine both CERCLA's remedial purpose and the Congressional intent that CERCLA be broadly construed.

Reconsideration is justified on the grounds suggested by Plaintiff. Accordingly, the Court revisits the question whether a substance must be a "hazardous waste" under the SWDA in order for a defendant to be liable for cleanup costs under CERCLA.

## I. CERCLA

Congress passed CERCLA in an effort to address the threat to public health and the environment caused by the disposal of hazardous substances. *United States v. Ward,* 618 F.Supp. 884, 892 (E.D.N.C.1985) (citing S.Rep. No. 848, 96th Cong., 2d Sess. 2 (1980)). A fund was created, commonly referred to as the "Superfund," to pay for the cleanup of the damages incurred at disposal sites and to ensure the recoupment of past and future response costs, so that no portion of the burden would fall on the public. *United States v. Pesses,* 794 F.Supp. 151 (W.D.Pa. 1991) and Order Adopting Magistrate's Decision (W.D.Pa., Mar. 30, 1992) (citing *United States v. Shaner,* 20 Chem. Waste Lit.Rep. 1130, 1132–33, 1991 WL 9352 (E.D.Pa.1991)). Congress intended that responsible parties be held strictly liable for cleanup costs. *See New York v. Shore Realty Corp.,* 759 F.2d 1032, 1042 (2nd Cir.1985); *see also Levin Metals Corp. · v. Parr–Richmond Terminal Co.,* 799 F.2d 1312, 1316 (9th Cir.1986) (citing *Shore Realty* with approval).

■ To impose cleanup liability under CERCLA, a plaintiff must prove four elements, namely, that: (1) a release of a hazardous substance occurred, (2) at a site which is a facility, (3) causing the plaintiff to incur response costs, and (4) the defendant is a responsible person under the terms of the statute.[2] 42 U.S.C. § 9607(a); *United States v. Marisol, Inc.,* 725 F.Supp. 833, 837 (M.D.Pa.1989).

Defendant does not contest that the first three elements are satisfied. The sole question before the Court is whether Defendant is a responsible party under the terms of the statute. Under 42 U.S.C. § 9607(a)(3), liability is imposed on:

> any person who by contract, agreement, or otherwise *arranged for disposal or treatment ... of hazardous substances* owned or possessed by such person, by any other party or entity, at any facility ... owned or· operated by another party or entity and containing such hazardous substances....

42 U.S.C. § 9607(a)(3) (emphasis added). Thus, under this section, to hold Defendant responsible for cleanup costs, Plaintiff must show that: (1) solder dross is a hazardous substance, (2) there was a disposal or treatment of solder dross, and (3) Defendant arranged for that disposal or treatment.

---

**2.** Section 9607(a) of CERCLA holds four classes of persons or entities liable for cleanup costs: (1) the current owner and operator of a vessel or facility, (2) the former owners or operators of a facility at the time of disposal of any hazardous substance, (3) any persons who arranged for disposal or treatment of a hazardous substance .at any facility owned or operated by another person, and. (4) transporters of such substances to a facility. 42 U.S.C. § 9607(a)(1)–(4).

### A. "Hazardous Substances" under CERCLA

Under CERCLA, "hazardous substances" include, *inter alia,* any substances so designated by the Environmental Protection Agency ("EPA") pursuant to § 9602 or by any of four other environmental statutes, and any waste having certain characteristics defined by the EPA. 42 U.S.C. § 9601(14); *see* 40 C.F.R. 261.20 *et seq.*

Defendant does not dispute that the solder dross stored at the Summer site contained hazardous material. Plaintiff's investigations of samples taken from the site showed that the dross exhibited the requisite degree of toxicity to be considered hazardous under the CERCLA definition of hazardous substance. Defendant contends, however, that CERCLA defines "disposal" and "treatment" by reference to the definitions of those terms in the SWDA and that solder dross is not regulated under the SWDA. CERCLA, 42 U.S.C. § 9601(29). The SWDA, notes Defendant, defines "disposal" and "treatment" in terms of "solid wastes" or "hazardous wastes," not in terms of "hazardous substances." Since the terms "disposal" and "treatment" are defined with reference to the SWDA, and not CERCLA, Defendant contends that only those substances qualifying as "solid waste" or "hazardous waste" under the SWDA can create disposal or treatment liability under CERCLA. In support of this argument, Defendant cites the Ninth Circuit decision in *3550 Stevens Creek Associates v. Barclays Bank of California,* 915 F.2d 1355.

In *Stevens Creek* a building owner sued the previous owner who had installed asbestos in the building to recover costs incurred in removing that asbestos. The court ruled that the party who installed insulation that contained asbestos in a building was not liable under CERCLA for "disposal of a hazardous substance." While the court assumed that the insulation was a "hazardous substance" under CERCLA, in holding that the building owner was not liable, it stated that "[o]n its face 'disposal' pertains to 'solid waste or hazardous waste,' not to building materials...." *Id.* at 1361.

Defendant urges that given the Ninth Circuit's use of the terms "solid waste" and "hazardous waste" rather than "hazardous substance" to define the materials for which disposal or treatment liability attaches, under *Stevens Creek* only the disposal of those substances designated as SWDA-regulated "solid wastes" or "hazardous wastes" can create CERCLA liability. However, a close reading of *Stevens Creek* reveals that although it used the terms "solid waste" and "hazardous waste" rather than "hazardous substance," the Ninth Circuit did not intend its decision to be read as Defendant urges. The *Stevens Creek* court was not asked to decide whether a hazardous substance must be a "hazardous waste" under the SWDA for disposal liability under CERCLA to attach. Rather, it was deciding whether installation of insulation containing asbestos constitutes "disposal." The court explained its substitution of the term "hazardous waste" for "hazardous substance," noting that "in the context of CERCLA, hazardous substances are generally dealt with at the point when they are about to, or have become, wastes." *Id.* at 1362.

Furthermore, the reading of *Stevens Creek* that Defendant urges would contradict or render moot important portions of CERCLA. *CP Holdings v. Goldberg–Zoino & Associates,* 769 F.Supp. 432, 437 (D.N.H.1991) (criticizing *Stevens Creek* ). Section 9607(a) of CERCLA explicitly applies to the "disposal or treatment of *hazardous substances,*" not merely to the disposal or treatment of hazardous waste. 42 U.S.C. § 9607(a)(3) (emphasis added). The drafters of CERCLA appear to have referred to sections 6903(3) and 6903(34) of the SWDA only to define the actions of "disposal" and "treatment," not to define the objects of those actions, the materials to be disposed of or treated. *See State of California v. Verticare.* No. C–92–1006 MHP, at 20 (N.D.Cal. Mar. 2, 1993). If the Court adopts the reading of *Stevens Creek* that Defendant urges, hazardous substances which are not hazardous wastes would be excluded from the statute's reach. Such a reading would be illogical in light of the use of the word "hazardous substance."

■ Finally, it is consistent with the purpose of CERCLA to impose liability under CERCLA for the disposal or treatment of

substances which do not meet the definition of waste under the SWDA. CERCLA and the SWDA serve different purposes. Recognizing the distinct purposes, "Congress and the EPA have carefully distinguished between *wastes*, to which the [SWDA] applies, and *substances*, to which CERCLA applies...." *B.F. Goodrich Co. v. Murtha*, 958 F.2d 1192, 1202 (2d Cir.1992) (emphasis added).

■ The SWDA is preventative and regulates routine handling of potentially hazardous materials. For SWDA regulations to apply, the site must meet "threshold quantity or concentration requirements—considerations which are irrelevant in defining hazardous substances under CERCLA." *Id.* at 1202. CERCLA, on the other hand, is curative. It imposes liability when a release occurs that warrants a cleanup response—regardless of the amount of hazardous substances present. *Id.* Given the distinct purposes of the acts, it follows that they cover different materials. An EPA determination that solder dross is not sufficiently dangerous to justify imposing the most stringent regulations to govern its day to day handling under the SWDA, does not imply that the harm caused by solder dross's improper disposal is also insufficient to justify regulation under CERCLA. *Id.*

In sum, the explicit language of CERCLA, the apparent intent of the drafters, and the distinct purposes of CERCLA and the SWDA compel the conclusion that a substance need not be a "hazardous waste" under the SWDA for liability under CERCLA to attach. Nor does *Stevens Creek* dictate a contrary result.

### B. "Disposal" and "Treatment" under CERCLA

Defendant contends that even if solder dross can potentially give rise to disposal and treatment liability, no "treatment" occurred at the Summer reclamation site and Summer, alone, was responsible for the "disposal."

CERCLA defines "disposal" and "treatment" by reference to the definitions of those terms in the SWDA. 42 U.S.C. § 9601(29). "Disposal" is defined as:

> the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

42 U.S.C. § 6903(3).

"Treatment" is defined as:

> any method, technique, or process, including neutralization, designed to change the physical, chemical, or biological character or composition of any hazardous waste so as to neutralize such waste or so as to render such waste nonhazardous, safer for transport, amenable for recovery, amenable for storage, or reduced in volume....

42 U.S.C. § 6903(34).

■■ Summer heated the solder dross so that the metals it contained would melt and separate from the nonmetal impurities. *See* Decl. of Frank Guance in Reply. The process changed the physical character of the solder dross and allowed Summer to recover the reusable portion. Inducing this change constitutes "treatment" of a hazardous substance within the meaning of the statute.[3] Moreover, after treating the solder dross, Summer buried the remaining unusable material which contained high levels of lead and zinc compounds. This constitutes a "disposal" within the meaning of the statute. Thus, both a "disposal" and "treatment" occurred at the site.

---

3. Defendant asserts that this process does not constitute "treatment" because Summer did not render the solder dross *"amenable* to recovery," but, rather, conducted the *actual* reclamation. Defendant differentiates between treatment and reclamation by reference to regulations promulgated by the EPA under the SWDA. However, these regulations define "treatment" to include "any process ... designed ... so as to recover ... material resources from the waste." 40 C.F.R. § 260.10. Because the reclamation process performed by Summer "was designed to recover material resources from the waste" it qualifies as treatment within the meaning of the regulations. *See also, Pesses,* 794 F.Supp. at 157 (melting scrap materials to make alloys constitute's "treatment" under CERCLA).

## C. "Arranged" under CERCLA.

■ Defendant argues that even if solder dross was disposed of or treated at the Summer site, Defendant did not "arrange for" its disposal or treatment. The term "arranged" is not defined by the statute. Whether a transaction constitutes an "arrangement for the disposal or treatment" of a hazardous substance is a fact-specific inquiry. *Florida Power & Light Co. v. Allis–Chalmers Corp.*, 893 F.2d 1313, 1317 (11th Cir.1990). Although the Ninth Circuit has not yet examined whether a party which sells a by-product of its manufacturing process to another party for reclamation "arranged" for disposal or treatment under CERCLA, the Ninth Circuit has stated that CERCLA is to be construed broadly to accomplish its remedial purpose. *Wilshire Westwood Associates v. Atlantic Richfield,* 881 F.2d 801, 804 (9th Cir.1989); *Stevens Creek,* 915 F.2d at 1363.

■ Defendant argues that it is immune from liability because in selling solder dross to Summer, it was selling a useful product, rather than arranging for disposal or treatment of a waste product. However, characterizing a transaction as a "sale" instead of an "arrangement for disposal or treatment" does not protect a party from liability. *See United States v. Conservation Chemical Co.,* 619 F.Supp. 162, 240–241 (W.D.Mo.1985); *New York v. General Electric Co.,* 592 F.Supp. 291, 297 (N.D.N.Y. 1984). Rather, the relevant inquiry is "who decided to place the waste into the hands of a facility that contains hazardous wastes." *Conservation Chemical Co.,* 619 F.Supp. at 240. In this case, Defendant did so.

■ Furthermore, the "sale of a useful product" defense applies when the sale is of a new product, manufactured specifically for the purpose of sale, or of a product that remains useful for its normal purpose in its existing state.[4] In contrast, the courts have consistently rejected the "sale of a useful product" defense when the purpose of the sale is to get rid of or treat a waste or by-product.[5] Here, the solder dross sold by Defendant was not manufactured specifically for purpose of sale. Rather, it was a by-product of Defendant's can manufacturing process. Defendant's sale of solder dross was accomplished to get rid of or treat the by-product of its manufacturing process. Thus, Defendant's attempt to characterize the transfer as a sale rather than an arrangement for disposal is unpersuasive.

■ Defendant further argues that liability under CERCLA is limited to the party who both owned the hazardous substance and decided how to dispose of or treat it.[6] The Ninth Circuit has never adopted this requirement. Moreover, this argument was expressly rejected as a *per se* rule in *Florida Power,* 893 F.2d at 1318. The court instead found that even though a manufacturer does not make the critical decisions as to how, when, and by whom a hazardous substance is to be disposed, the manufacturer may still be liable. The dispositive inquiry is whether the

---

4. *See, e.g., Prudential Insurance Co. of America v. United States Gypsum,* 711 F.Supp. 1244, 1254 (D.N.J.1989) (sale of asbestos containing material to be used in building construction does not subject a party to liability under CERCLA); *Edward Hines Lumber Co. v. Vulcan Materials Co.,* 685 F.Supp. 651, 654, 656 (N.D.Ill.1988), *aff'd on other grounds,* 861 F.2d 155 (7th Cir.1988) (sale of chemicals to a wood treatment facility for use in the manufacturing process was a sale of a true product, not of a waste or a by-product and no liability attaches under CERCLA); *Florida Power & Light Co. v. Allis Chalmers Corp.,* 893 F.2d 1313, 1319 (11th Cir.1990) (sale of PCB filled transformers for continued use as transformers was a mere sale of a product and the manufacturers are not liable under CERCLA).

5. *See e.g., Pesses,* 794 F.Supp. at 156 (sale of scrap material to be processed is an arrangement for treatment or disposal); *General Electric Co.,* 592 F.Supp. at 297 (sale of used transformer oil to be used for dust control was an arrangement for treatment or disposal under CERCLA); *United States v. A & F Materials, Inc.,* 582 F.Supp. 842, 845 (S.D.Ill.1984) (sale of spent caustic solution used to neutralize waste oil was arrangement for treatment or disposal under CERCLA); *Conservation Chemical Co.,* 619 F.Supp. at 240–41 (sale of fly ash to neutralize wastes was arrangement for treatment or disposal under CERCLA).

6. Defendant relies on *Conservation Chemical,* 619 F.Supp. at 241; *C. Greene Equipment Corp. v. Electron Corp.,* 697 F.Supp. 983, 987 (N.D.Ill. 1988); *Jersey City Redevelopment Authority v. PPG Industries,* 655 F.Supp. 1257, 1260 (D.N.J. 1987); and *State of California v. Verticare Inc.,* No. C–92–1006 MHP, at 17 (Mar. 1, 1993).

manufacturer intended to otherwise dispose of hazardous waste when it sold the product. *Id.* at 319 [7]; *accord, Pesses,* 794 F.Supp. 151 (Liability under CERCLA attaches even where the defendant does not retain ownership or control of the material, as long as there is evidence that the defendant otherwise arranged for the disposal or treatment).

 Defendant disposed of hazardous waste when it sold the solder dross to Summer. The only options available to Defendant were to dispose of the solder dross itself, reclaim the useable portion and dispose of the remaining hazardous substance, or transfer it to a third party. In choosing the third option, Defendant, thus, arranged for treatment and disposal under CERCLA.

Accordingly, IT IS HEREBY ORDERED that:

(1) Plaintiff's Motion to Reconsider is GRANTED;

(2) Defendant's Motion for Summary Judgment is DENIED; and

(3) Plaintiff's Cross-motion for Summary Judgment is GRANTED.

---

7. While the court in *Florida Power,* 893 F.2d 1313, found that sale of a *useful* manufactured product without more could not subject a party to liability, this does not aid Defendant because solder dross is a waste by-product of its can manufacturing business and not a useful manufactured product in its own right.